**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: | CASE NO.   18-51538 (JAM) |
| ALISON L. BORG, | |
|     Debtor. | CHAPTER   7 |
| | |
| LYNNE CLOUTIER, | |
|     Plaintiff, | |
| | |
| v. | |
| | ADV. PRO. NO.   19-05007 (JAM) |
| ALISON L. BORG, | |
|     Defendant. | ECF NO.   7 |

**APPEARANCES**

William J. O'Sullivan                                                                                    *Attorney for the Plaintiff*
O'Sullivan McCormack Jensen & Bliss PC
Putnam Park, Suite 100
100 Great Meadow Road
Wethersfield, Connecticut 06109-2371

Christopher G. Winans                                                                              *Attorney for the Defendant*
98 Mill Plain Road – Suite 2A
Danbury, Connecticut 06811

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**MOTION FOR SUMMARY JUDGMENT**

Julie A. Manning, United States Bankruptcy Judge

**I.     INTRODUCTION**

Before the Court is the Plaintiff's Motion for Summary Judgment on her claim that the debt owed her by the Defendant should be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). (ECF No. 7, the "Motion.")  For the reasons stated below, the Court grants the

Motion as to the injury and malicious injury elements of the cause of action, but denies the Motion as to the willful injury element of the cause of action.

## II. BACKGROUND

On February 6, 2019, the Plaintiff, Lynne Cloutier, filed the instant adversary proceeding against Alison Borg, the above-captioned Defendant and Debtor, alleging that the debt owed to the Plaintiff should be deemed non-dischargeable under 11 U.S.C. § 523(a)(6). (ECF No. 1, the "Complaint.") On March 15, 2019, the Plaintiff moved for summary judgment arguing collateral estoppel based on litigation in the Connecticut Superior Court - *Borg v. Cloutier*, FST-CV-16-6028856-S (Conn. Super. Ct. Nov. 30, 2020) (the "Superior Court Action"). (ECF No. 7.) That same date, the Plaintiff filed her Memorandum of Law in Support of Summary Judgment (ECF No. 8, the "Memorandum of Law"), her Local Rule 56(a)(1) Statement of Undisputed Material Facts (ECF No. 9, the "56(a)(1) Statement"), and the Affidavit of Brian M. Paice, Esquire (ECF No. 10, the "Affidavit"), attached to which were exhibits supporting the 56(a)(1) Statement.

On April 12, 2019, the Defendant filed an Objection to Plaintiff's Motion for Summary Judgment. (ECF No. 24, the "Objection.") The Defendant did not file a statement of facts in opposition to summary judgment under D. Conn. L. R. 56(a)(2). In her Objection, the Defendant argued that the adversary proceeding should be stayed pending the resolution of her appeal of the Superior Court Action. (ECF No. 24.) On April 17, 2019, the Plaintiff filed a Reply Memorandum in Support of Motion for Summary Judgment, arguing a determination of the Motion should not be stayed pending appeal. (ECF No. 27, the "Response.") On May 15, 2019, the Court entered an order staying the adversary proceeding pending appeal. (ECF No. 31.)

On October 23, 2020, the Plaintiff filed a Notice That State-Court Proceedings Have Concluded and Stay of this Adversary Proceeding Should Be Lifted, informing the court of the

Appellate Court decision in *Borg v. Cloutier*, 239 A.3d 1249 (Conn. App. Ct. 2020) (the "Appellate Court Ruling").  (ECF No. 32, the "First Notice.")  On October 30, 2020, the Defendant filed her Objection to Plaintiff's "Notice" Regarding State Court Proceedings arguing that because certain questions were remanded to the Superior Court, the stay should of the adversary proceeding should continue.  (ECF No. 33.)  On November 2, 2020, the Plaintiff filed Plaintiff's Reply to Objection to Notice.  (ECF No. 34.)  On November 5, 2020, the Court continued the stay of the adversary proceeding.  (ECF No. 35.)

On February 4, 2022, the Plaintiff filed another Notice That State-Court Proceedings Have Concluded and Stay of this Adversary Proceeding Should Be Lifted, informing the Court of the November 30, 2020, post-remand order in the Superior Court Action and the December 28, 2021, *per curium* order of the Connecticut Appellate Court affirming said order, *Borg v. Cloutier*, 264 A.3d 1136 (Conn. App. Ct. 2021) (the "*Per Curium* Ruling," and together with the Appellate Court Ruling, the "Appellate Court Rulings").  (ECF No. 38, the "Second Notice.")  On February 7, 2022, the Court ordered a status conference and set a briefing schedule for the Second Notice.  (ECF No. 39.)  On March 23, 2022, the Defendant filed her Response to Plaintiff's Notice Re: Stay, stating that the appellate stay was no longer in effect and proposing a briefing schedule.  (ECF No. 42.)  That same date, the Plaintiff filed her Reply to Defendant's Response opposing Defendant's proposed briefing schedule.  (ECF No. 43.)  On April 19, 2022, a status conference was held.  (ECF No. 49.)  The next day, the Court issued a Scheduling Order Regarding Motion for Summary Judgment.  (ECF. 50.)  By that order, the Court vacated the stay on this proceeding and set the briefing schedule.  (*Id.*)

The Defendant did not file any further opposition to the motion for summary judgment within the time allowed.  On May 27, 2022, the Plaintiff filed a Request for Adjudication of Her

3

Motion for Summary Judgment. (ECF No. 53.) On October 28, 2022, the Court entered an order requiring that the Plaintiff file an amended statement of undisputed material facts pursuant to D. Conn. L.R. 56(a)(1) and providing the Defendant time to file a responsive statement of facts pursuant to D. Conn. L.R. 56(a)(2). (ECF No. 54.) On November 1, 2022, the Plaintiff filed her Amended Local Rule 56(a)(1) Statement of Undisputed Material Facts (ECF No. 55, the "Amended 56(a)(1) Statement") as well as her Updated and Amended Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 56, the "Amended Memorandum of Law"). The Defendant did not file an amended 56(a)(2) statement. This matter is now fully briefed and ripe for decision.

### III.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### IV.  STATEMENT OF UNDISPUTED FACTS

Because the Defendant has not filed her opposition to the Plaintiff's Amended 56(a)(1) Statement, the facts contained therein are deemed admitted, insofar as they are supported by the evidence. *See* D. Conn. L. R. 56(a)(1); *see also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746-747 (Bankr. D. Conn. 2014). The Plaintiff's Amended 56(a)(1) Statement is incorporated below:

1. By a writ and complaint returned to the Connecticut Superior Court on April 22, 2016, the Defendant-Debtor and her husband, John Borg, for himself and on behalf of their minor

daughter, commenced an action against the Plaintiff herein, Lynne Cloutier, in the Connecticut Superior Court, captioned *Borg v. Cloutier*, Connecticut Superior Court, Judicial District of Stamford/Norwalk at Stamford, FST-CV-16-6028856-S.  The Complaint sounded in nuisance, invasion of privacy, and trespass.  ECF No. 10 Ex. 1.

2. In the Superior Court Action, Ms. Cloutier filed a Counterclaim against the Debtor-Defendant and her husband.  The final version of Ms. Cloutier's Counterclaim was set forth in her "Answer to Amended Complaint dated December 12, 2017, Special Defenses and Counterclaim," which was filed on December 12, 2017, and docketed in the State Court Action as entry #239.00.  *Id.* Ex. 2.

3. Ms. Cloutier's "Counterclaim Directed Against John Borg and/or Alison Borg" began with a statement of "facts common to all counts."  That part of the Counterclaim included, in relevant part, the following allegations against both the Debtor-Defendant and her husband: "The plaintiffs John Borg and/or Alison Borg erected two large flood lights on their property, that are turned on at all times of the day and evening, that shine into [Ms. Cloutier's] entire home, including her bedroom.  The plaintiffs John Borg and/or Alison Borg use of said lights violates the Town of Westport Zoning Regulations § 32-7.1.  [Ms. Cloutier] has repeatedly requested that the plaintiffs John Borg and/or Alison Borg remove said lights and they have repeatedly failed to do so."  *Id.* Ex. 2.

4. In the First Count of her Counterclaim, Ms. Cloutier repeated these allegations by reference, and alleged that the Borgs' conduct constituted a private nuisance.  In the Second Count of her Counterclaim, "Invasion of Privacy: Intrusion Upon Seclusion," Ms. Cloutier again repeated the allegations of paragraphs 10 through 12, and added in paragraph 26 that the conduct of both Mr. and Mrs. Borg was "an intentional intrusion upon [Ms. Cloutier's] solitude,

seclusion, private affairs or concerns" and was "highly offensive to a reasonable person." *Id.* Ex. 2.

5. The Superior Court Action proceeded to trial before a jury in January 2018. Affidavit.

6. On January 23, 2018, the trial court's jury charge in the Superior Court Action included the following language, as set forth in the transcript of that proceeding:

> [O]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his or her private affairs or concerns, is subject to liability to the other person for invasion of his or her privacy, if the intrusion would be highly offensive to a reasonable person. … For liability to exist, the interference with the plaintiff's seclusion must be a substantial one, of a kind that would be highly offensive to the ordinary reasonable man or woman, as the result of conduct to which the reasonable man or woman would strongly object. Each party asserting a claim of invasion of privacy must establish all the elements I have described. This includes the plaintiffs with respect to their claims against the defendant and-it applies to the defendant's claims against the adult plaintiffs.

ECF No. 10 Ex. 3.

7. On January 24, 2018, the jury in the Superior Court Action rendered its verdict, filed therein at docket entry #267.00. The jury found in favor of Ms. Cloutier on the Borgs' Complaint against her. The jury also rendered a verdict for Ms. Cloutier on her Counterclaim against the Defendant, in the amount of $292,295.59, with a finding that punitive damages were warranted, and a verdict against John Borg. *Id.* Ex. 4.

8. In Jury Interrogatories, filed on January 24, 2018, in the Superior Court Action at docket entry #266.00, the jury broke down its award against the Defendant as $146,259.59 ($295.59 in economic damages and $146,000.00 in non-economic damages) on the private nuisance claim and $146,000.00 (all non-economic damages) on the invasion of privacy (seclusion) claim, and specified that these figures should be added together for a total award of $292,295.59 against the Defendant. *Id.* Ex. 5.

9. On March 2, 2018, the Borgs filed, at docket entry number #282.00 in the Superior Court Action, the "Plaintiffs' Omnibus Motion and Memorandum to Set Aside Verdict and/or for Remittitur Regarding Jury Verdict No. 267" ("Motion to Set Aside Verdict"). *Id.* Ex. 6.

10. In its Memorandum of Decision on the Motion to Set Aside Verdict, filed on May 8, 2018, at docket entry #282.02, the court in the Superior Court Action made it clear that the awards for private nuisance and invasion of privacy (seclusion) were for the same conduct on the part of the Defendant (and her husband) – namely, placing and maintaining the intrusive flood lights:

> The claims of private nuisance and invasion of privacy (seclusion) generating this award of $584,591.19 were primarily if not exclusively based on what the defendant described as flood lights or stadium lights on the plaintiff's property, shining on the defendant's property, in such a manner as to compromise her ability to use and enjoy her home. … [T]he jury could have concluded that Mrs. Borg's control over the premises, which would include the objectionable lighting, made her tortiously liable for the installation and persistence of the lighting as a private nuisance and invasion of privacy (seclusion).

*Id.* Ex. 7.

11. In the court's later Memorandum of Decision on Motion re: Injunctive Relief, filed in the Superior Court Action on August 23, 2018, at docket entry #306.03, the court observed "[t]hose theories of liability, in turn, were predicated solely on the lighting from the [Borgs'] home interfering with [Ms. Cloutier's] use of her home." *Id.* Ex. 8.

12. In the court's Memorandum of Decision on Motion to Set Aside Verdict in the Superior Court Action, the trial court denied the Borgs' motion to set aside the verdict, but ordered a remittitur in the form of an order that the verdicts against the Debtor and her husband upon the nuisance claim and privacy (seclusion) claim be treated as joint and several. *Id.* Ex. 7.

13. Ms. Cloutier accepted the remittitur. *Id.* Ex. 9.

14. In its subsequent Memorandum of Decision re: Motion to Set Amount of Punitive Damages, filed on May 9, 2018, at 281.02, the court in the Superior Court Action awarded Ms. Cloutier punitive damages in the amount of $32,600.00 against the Defendant and her husband. Combined with the damages award of $292,295.59, a total judgment of $324,895.59 entered in favor of Ms. Cloutier against the Defendant. *Id.* Ex. 10.

15. The trial court's judgment against the Defendant in the Superior Court Action was affirmed on appeal, and its judgment against the Defendant's husband, John Borg, was partially reversed. Appellate Court Ruling.

16. Following a remand and further proceedings before the court in the Superior Court Action, John Borg filed a second appeal, which led to a second decision of the Appellate Court that concluded the state court proceedings. *Per Curium* Ruling.

17. The jury verdict for invasion of privacy in the Superior Court Action, a final judgment on the merits, was based on a finding that the Defendant at least acted recklessly.[1] ECF No. 10 Ex. 3, 5, 7, 8, 10.

18. The jury verdict for invasion of privacy in the Superior Court Action, a final judgment on the merits, was based on findings not only that the Defendant acted at least recklessly, but also that she acted in a way "that would be highly offensive to a reasonable person." *Id.* Ex. 3.

19. The jury verdict for invasion of privacy in the Superior Court Action, a final judgment on the merits, was based on a finding that the Defendant's interference with Ms. Cloutier's seclusion was "a substantial one." *Id.* Ex. 3.

---

[1] Here, and in the succeeding paragraphs, the Court, upon its own review of the record, departs from the Amended 56(a)(1) Statement.

20. The jury verdict for invasion of privacy in the Superior Court Action, a final judgment on the merits, was based on a finding that the relevant conduct by the Defendant was "conduct to which the reasonable man or woman would strongly object." *Id.* Ex. 3.

21. The jury verdict for private nuisance, a final judgment on the merits, was based on the same conduct by the Defendant that supported the confirmed verdict for invasion of privacy. *Id.* Ex. 7.

22. The full unpaid amount of Ms. Cloutier's $324,895.59 judgment against the Defendant is acknowledged in schedule E/F in the Defendant's Chapter 7 bankruptcy case. Schedule E/F, *In re Borg*, Case No. 18-51538 (JAM) (Bankr. D. Conn. Feb. 6, 2019), ECF No. 1.

## V.  CONCLUSIONS OF LAW

### A. Legal Standard

#### i. Summary Judgment

Under Fed. R. Civ. P. 56(a), made applicable in the instant adversary proceeding by Fed. R. Bankr. P. 7056, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." While a movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," a movant is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where the movant meets its factual burden, an "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, to succeed on the motion, the movant must be entitled, upon the undisputed material facts, to judgment as a matter of law – the judge, in ruling on the motion, is not acting as a finder of fact. *Anderson*, 477 U.S. at 250. Summary judgment should enter "where the evidence is such that it 'would require a directed verdict for the moving party.'" *Id.* at 251 (internal citations omitted).

    ii. **Section 523(a)(6)**

Section 523(a)(6) states that any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from the discharge. It is a creditor's burden to establish, by a preponderance of the evidence, that a debt falls within the scope of section 523(a)(6). *Grogan v. Garner*, 498 U.S. 279, 291 (1991). It must be established that the debt was (1) for an injury, which injury was (2) willful and (3) malicious. "Willful" and "malicious" are separate elements. *See, e.g., Guggenheim Capital LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 802-03 (Bankr. E.D.N.Y. 2014); *Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 747-750 (Bankr. D. Conn. 2014). As the Plaintiff seeks to do in the instant case, a creditor may establish these elements through collateral estoppel. *Grogan*, 498 U.S. at 284 n.11; *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 (2d Cir. 2019); *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).

    B. **Collateral Estoppel**

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different

cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984). The party seeking to utilize the doctrine of collateral estoppel bears the burden of proving the elements necessary for its application. *Automated Salvage Transp. Co. v. Swirsky (In re Swirsky)*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006).

When determining whether a state court judgment has preclusive effect, the court must apply the preclusive law of the rendering state. *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996). Here, the Plaintiff seeks to give a judgment under Connecticut law preclusive effect. Under Connecticut law, "collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." *Cumberland Farms, Inc. v. Town of Groton*, 808 A.2d 1107, 1116 (Conn. 2002). To be subject to collateral estoppel, an issue must have been (1) "fully and fairly litigated," (2) "actually decided," (3) "necessary to the judgment" in the first action, and (4) "identical" to the issue to be decided in the second action. *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 515 (D. Conn. 2009) (citing *Virgo v. Lyons*, 551 A.2d 1243 (Conn. 1988) and *State v. Joyner*, 774 A.2d 927 (Conn. 2001)). An issue is (1) fully and fairly litigated and (2) actually decided "if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Lafayette v. Gen. Dynamics Corp.*, 770 A.2d 1, 9 (Conn. 2001) (internal citations omitted). An issue is (3) necessary to the judgment if, "in the absence of a determination of the issue, the judgment could not have been validly rendered." *Id.* (internal citations omitted). An issue is (4) identical if it is the same in both the prior and present actions.

11

### i. Injury

The Defendant is collaterally estopped from arguing there was no injury. The jury returned a verdict finding the Defendant liable to the Plaintiff for damages stemming from private nuisance and invasion of privacy. (ECF No. 10 Ex. 4.) This verdict has been substantially upheld by the Superior Court Judge (*Id.* Ex. 7) and by the Appellate Court Rulings. The Court finds that this issue was fully and fairly litigated, actually decided, necessary to the Connecticut Superior Court's judgment, and identical to the issue before this Court now. *Faraday*, 596 F. Supp. 2d at 515. Therefore, the Court finds injury has been established as a matter of law.

### ii. Willful Injury

In *Kawaauhau v. Geiger*, the Supreme Court held that willfulness, in the context of section 523(a)(6), requires "not merely a deliberate or intentional *act* that leads to injury" but rather "a deliberate or intentional *injury*." 523 U.S. 57, 61 (1998). The Supreme Court further stated that "the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts." *Geiger*, 523 U.S. at 61. Quoting the Restatement (Second) of Torts, the Supreme Court noted that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply the 'the act itself.'" *Id.* at 61-62. The Supreme Court, however, approved of an earlier holding – namely, *McIntyre v. Kavanaugh* –, which held "'A wilful [sic] disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully [sic] and maliciously,'" 242 U.S. 138, 141-42 (1916), suggesting that, under *Geiger*, willful injury may not require actual intent to injure. 523 U.S. at 63; *see* Restatement (Second) of Torts § 8A cmt. b (Am. Law Inst. 2022)

12

("Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness . . .").

Since *Geiger*, other than actual intent to injure, circuits have split as to what is sufficient to show willful injury, namely whether (a) subjective knowledge or, perhaps, belief that the intended act is substantially likely to cause injury or (b) the knowledge of reasonable person that the intended act is substantially likely to cause injury, is sufficient to show willful injury. *Compare Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("The district court overlooked the criticality of the terms 'willful' act and 'malicious injury' in § 523(a)(6). Without proof of both, an objection to discharge under that section must fail. For example, in *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999), the court held, to constitute a willful act under § 523(a)(6), the debtor must 'desire ... [to cause] the consequences of his act or ... believe [that] the consequences are substantially certain to result from it.'"); *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1143-1146 (9th Cir. 2002) (holding willful injury requires "subjective intent to cause harm or [subjective] knowledge that harm was substantially certain"); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) ("Nonetheless, from the Court's language and analysis in *Geiger*, we now hold that unless 'the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6).") *with Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998) ("Rather, either

13

objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful ... injury' in § 523(a)(6)").

The Court finds that, under the subjective approach, the Defendant would not be collaterally estopped from litigating whether the injury the Plaintiff suffered was willful. The Plaintiff's cites to Connecticut state court decisions which do not support granting summary judgment on the issue of willful injury. In *Elliott v. City of Waterbury*, the Connecticut Supreme Court collapsed any distinction between "wanton and reckless conduct, on the one hand, and willful [sic], intentional and malicious conduct, on the other," for common law torts in Connecticut, such as invasion of privacy. 715 A.2d 27, 42 (Conn. 1998); *but see Geiger*, 523 U.S. at 61. Therefore, *Right v. Breen*, 890 A.2d 1287 (Conn. 2006), and *Thibodeau v. American Baptist Churches of Connecticut*, 994 A.2d 212 (Conn. App. Ct. 2010), cited by the Plaintiff, do not support the conclusion that invasion of privacy, under Connecticut law, is an intentional tort for the purposes of *Geiger*. Moreover, in both cases, the issue of whether invasion of privacy was an intentional tort was not before the court but rather was noted by a source cited by the court for other reasons. *Breen*, 890 A.2d at 1291; *Thibodeau*, 994 A.2d at 224.

The Plaintiff also cites to *O'Connor v. Board of Education*. 877 A.2d 860, 863 (Conn. App. Ct. 2005). In *O'Connor,* regarding a statutory cause of action and, hence, not affected by *Elliott*, the Connecticut Appellate Court held that the jury found the intent requisite for municipal liability in finding an intentional intrusion upon seclusion. Nevertheless, while the portion of the jury charge quoted in *O'Connor* is identical to the jury charge in the instant case, the Court, for the reasons stated below, does not come to a similar conclusion in this case.

The jury in the Superior Court Action was instructed that liability could be found for private nuisance as either a negligent tort or an intentional tort. (ECF No. 10 Ex. 3 at 131:24-

14

26.) Regarding, invasion of privacy, the Superior Court Judge instructed the jury, in pertinent part, that "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his or her private affairs or concerns, is subject to liability . . .." (Id. Ex. 3 at 134:6-9.) While when instructing the jury regarding private nuisance, the Superior Court Judge stated that "Intentional conduct is not simply a volitional act . . .. A person acts intentionally with respect to a result when it is his or her conscious objective to bring about that result," he did not repeat this instruction regarding invasion of privacy, leaving it unclear as to whether "intentionally intrudes" meant volitionally intrudes or intrudes with the specific intent to invade privacy. (*Compare id*. Ex. 3 at 131:27-132:6 *with id.* Ex. 3 at 133:27-135:27 (detailing various other elements but not intentionality).) *Cf.* Restatement (Second) of Torts §§ 8A cmt. b, 652B (Am. Law Inst. 2022) (the definition making clear what the Restatement version of intrusion of seclusion requires). Moreover, the Superior Court Judge also instructed the jury that "an unreasonable intrusion" was an invasion of privacy before reformulating the jury instruction to "intentionally intrudes." (ECF No. 10 Ex. 3 at 134:4-5.) The Court, therefore, finds the jury charge to be unclear and unable to be given collateral estoppel effect in this adversary proceeding.

Other evidence in the record of the Superior Court Action does not support the conclusion that the jury understood intent to be required. The jury questionnaire sounded in negligence regarding both torts – it asked the jury to determine if the Defendant acted unreasonably – but asked, regarding liability for punitive damages, whether the jury found the Defendant reckless, which the jury affirmed. (*Id.* Ex. 5.) In the memorandum supporting the denial of the motion to set aside the verdict, regarding the sufficiency of the evidence to establish the Defendant's liability, the Superior Court Judge stated that the evidence presented "could lead

to an inference of recklessness if not affirmative malice," suggesting recklessness was enough to support the verdict – which suggestion accords with Connecticut law under *Elliot*. (Id. Ex. 7 at 16.) In upholding the Superior Court Judge's refusal to set aside the verdict, the Connecticut Appellate Court similarly considered whether the evidence was sufficient to establish recklessness pursuant to *Elliot*. *Borg*, 239 A.3d at 1263-66. Combined with the unclear jury charge, the evidence suggests that it was only necessary for the jury to find the Defendant reckless to support its verdict against her. *See Lafayette*, 770 A.2d at 9. Recklessness is established by a lesser appreciation of the risk than knowledge of a substantial likelihood that a course of conduct will cause harm. *Compare* Restatement (Second) of Torts § 8A cmt. b *with id.* § 500 cmt. a. Reckless injury is not willful injury. *Geiger*, 523 U.S. at 61.

In granting permanent injunctive relief, the Superior Court Judge also did not necessarily determine that the Defendant had actual intent to injure or subjective awareness of a substantial likelihood that a course of conduct would cause harm. The Defendant's conduct surrounding the purported replacement lights strained the Superior Court Judge's credulity, but it was not necessary to the ruling that this credibility determination extend to the Defendant's conduct underlying the cause of action. Ultimately, the Superior Court Judge's determination was based on the conclusion that, while there is "a bone fide value to security lighting," the "the equities overwhelmingly favor limiting the light output from the [Defendant's] security lights" and the lack of evidence that supposed corrective measures undertaken by the Defendant or her husband were indeed corrective and would persist into the future. (ECF No. 10 Ex. 8 at 12-13.)

The Court finds, however, that under the objective approach, the Defendant would be collaterally estopped from litigating whether the injury was willful. Regarding invasion of privacy, the jury was instructed that the intrusion upon seclusion had to be "highly offensive to a

16

reasonable person." (ECF No. 10 Ex. 3 at 134:11.) It was further instructed that such intrusion had to be "the result of conduct to which the reasonable man or woman would strongly object." (*Id.* Ex. 3 at 135:19-21.) This finding is also supported by the jury questionnaire, which asks the jury if Defendant intruded upon Plaintiff's seclusion "in a manner that would be highly offensive to a reasonable person." (*Id.* Ex. 5 at 21.) Furthermore, in ruling on the permanent injunction, the Superior Court Judge found the harm done to the Plaintiff immensely outweighed any benefit flowing to the Defendant. (*Id.* Ex. 8 at 12-13.) The Court finds that it was necessary to these rulings to determine that a reasonable person would know that shining the lights was substantially likely to cause injury. *See Miller*, 156 F.3d 598.

Nevertheless, considering the unsettled nature of the law in this Circuit, the Court declines to find the Defendant collaterally estopped from arguing that the injury was not willful, particularly given the subjective standard is the majority rule. Therefore, the Court cannot conclude, on the undisputed facts as a matter of law, that the injury was willful.

### iii. Malicious Injury

The Second Circuit has interpreted "malicious" in the context of 11 U.S.C. § 523(a)(6) to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996). Malice may be constructive or implied "where the nature of the act itself implies a sufficient degree of malice." *Id.* at 88 (citing *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

The Defendant is collaterally estopped from arguing that the injury was not malicious. Regarding invasion of privacy, the jury was charged that it was a necessary element that the intrusion upon seclusion be "highly offensive to a reasonable person" and "the result of conduct

to which the reasonable man or woman would strongly object." (ECF No. 10 Ex. 3 at 134:10-11, 135:18-21.) The jury questionnaire asks "Did [Plaintiff] prove, by a preponderance of the evidence, that [Defendant] unreasonably intruded upon her seclusion, in a manner that would be highly offensive to a reasonable person?" (*Id.* Ex. 5 at 21.) The jury checked "yes" next to this question. (*Id.*) The jury verdict was upheld upon motion to set it aside (*Id.* Ex. 7), which motion argued that Defendant could not have been properly found liable (*Id.* Ex. 6). The verdict was upheld, in pertinent part, by the Appellate Court Rulings. In support of the grant of a permanent injunction, the Superior Court Judge discussed extensively how little benefit the Defendant received from the placement of the lights and how much said placement cost the Plaintiff and how bewildered the Superior Court Judge was by the Defendant's stated positions. (ECF No. 10 Ex. 8 at 12-13.)

The Court finds that it was necessary to the jury's verdict and the Superior Court Judge's grant of a permanent injunction that they found that Defendant's actions were "without just cause or excuse" and implied "a sufficient degree of malice," *Stelluti*, 94 F.3d at 87-88; that these issues were actually litigated; and that they are the subject of a valid and final judgment. *Faraday*, 596 F. Supp. 2d at 515. Therefore, the Court, finds as a matter of law, that malicious injury has been established.

### VI.    CONCLUSION & ORDER

For the foregoing reasons, it is hereby

**ORDERED:** The Motion is **GRANTED IN PART** as to injury and malicious injury and **DENIED IN PART** as to willful injury; it is further

**ORDERED:** A pretrial conference shall be held on March 14, 2023, at 2:00 p.m. to discuss and address all remaining pre-trial issues.

Dated at Bridgeport, Connecticut this 18th day of January, 2023.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut